Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Rosanne L. Mah (State Bar No. 242628)
Email: rmah@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Plaintiffs' Counsel*

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ZOE NAYLOR, HANNAH STRATTON, ERICA DILLARD, KIMBERLY BROWN, GERALD TIANO, RONALD HAWKINS, KENNETH WOOLSEY,  FREDRICK CHRISTENSEN, LAUREN LONG, JEANETTE TAYLOR, LAURA CARLO, ROBYN LIPETZ, JAMES KILE, HAYLEY GOLDFELD, AMY NORMAN, TIM MORGAN, SHEMINA GHEEWALLA, and YUICHI MURAKAMI, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| APPLE INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

Page

**INTRODUCTION** ................................................................................. **3**

**JURISDICTION AND VENUE** ............................................................ **3**

**INTRADISTRICT ASSIGNMENT** ...................................................... **3**

**PARTIES** ............................................................................................... **3**

    A.   PLAINTIFFS ................................................................................ 3

    B.   DEFENDANT AND ITS RELEVANT CORPORATE STRUCTURE ................ 5

**SUBSTANTIVE ALLEGATIONS** ...................................................... **5**

**CHOICE OF LAW** ............................................................................... **9**

**CLASS ALLEGATIONS** ..................................................................... **10**

**TOLLING OF APPLICABLE LIMITATIONS PERIODS** ................ **13**

**CLAIMS FOR RELIEF** ....................................................................... **13**

**COUNT 1** ............................................................................................... **13**

    VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, ................ 13

       18 U.S.C. § 1030, *et seq.* ................................................... 13

**COUNT 2** ............................................................................................... **14**

    VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, ........ 14

       Cal. Bus. & Prof. Code § 17200, *et seq.* ............................... 14

**COUNT 3** ............................................................................................... **18**

    CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT, ................ 18

       Cal. Penal Code § 502, *et seq.* ............................................ 18

**COUNT 4** ............................................................................................... **19**

    TRESPASS TO CHATTELS ............................................................. 19

**JURY DEMAND** .................................................................................. **20**

**INTRODUCTION**

1.      Plaintiffs file this Class Action Complaint against Apple Inc. ("Apple," the "Company," or "Defendant") on behalf of themselves and all others similarly situated who purchased, owned, used, or leased one or more of Apple's Devices[1] for fraudulent misrepresentations and omissions, and other unlawful and unfair business practices.

**JURISDICTION AND VENUE**

2.      This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs allege that Apple violated, among other things, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*

3.       This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, and Apple is a citizen of a State different from that of at least one class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

4.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Apple's principal place of business is located in this District and substantial parts of the events or omissions giving rise to the claims occurred in the District. Venue is also proper in this Court because Apple is located here and the causes of action arose here.

**INTRADISTRICT ASSIGNMENT**

5.      Assignment of the cases originally filed within this District is proper to the San Jose Division under Local Rule 3-2-(e), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Santa Clara County, California.

**PARTIES**

A.      **Plaintiffs**

6.      Plaintiff Zoe Naylor is a citizen and resident of the State of Arkansas and acquired

---

[1] As used herein, the term "Devices" are the following products designed and marketed by Apple for sale: the iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus, iPhone 7, and iPhone 7 Plus.

CLASS ACTION COMPLAINT                    3

one or more Devices.

7.      Plaintiff Hannah Stratton is a citizen and resident of the State of Alaska and acquired one or more Devices.

8.      Plaintiff Erica Dillard is a citizen and resident of the State of Alaska and acquired one or more Devices.

9.      Plaintiff Kimberly Brown is a citizen and resident of the State of Arkansas and acquired one or more Devices.

10.     Plaintiff Gerald Tiano is a citizen and resident of the State of Delaware and acquired one or more Devices.

11.     Plaintiff Ronald Hawkins is a citizen and resident of the State of Idaho and acquired one or more Devices.

12.     Plaintiff Kenneth Woolsey is a citizen and resident of the State of Idaho and acquired one or more Devices.

13.     Plaintiff Fredrick Christensen is a citizen and resident of the State of Montana and acquired one or more Devices.

14.     Plaintiff Lauren Long is a citizen and resident of the State of Montana and acquired one or more Devices.

15.     Plaintiff Jeanette Taylor is a citizen and resident of the State of North Carolina and acquired one or more Devices.

16.     Plaintiff Laura Carlo is a citizen and resident of the Commonwealth of Pennsylvania and acquired one or more Devices.

17.     Plaintiff Robyn Lipetz is a citizen and resident of the Commonwealth of Pennsylvania and acquired one or more Devices.

18.     Plaintiff James Kile is citizen and resident of the State of South Carolina and acquired one or more Devices.

19.     Plaintiff Hayley Goldfeld is a citizen and resident of the State of Tennessee and acquired one or more Devices.

20.     Plaintiff Amy Norman is a citizen and resident of the State of Tennessee and acquired one or more Devices.

21.     Plaintiff Tim Morgan is a citizen and resident of the United Kingdom and acquired one or more Devices.

22.     Plaintiff Shemina Gheewalla is a citizen and resident of the United Kingdom and acquired one or more Devices.

23.     Yuichi Murakami is a citizen and resident of Japan and acquired one or more Devices.

**B.     Defendant and Its Relevant Corporate Structure**

24.     Apple Inc. ("Apple"), is a corporation that was created under the laws of the State of California, and has its principal place of business in Cupertino, California.  Apple is the world's largest information technology company by revenue and the world's third-largest mobile phone manufacturer.  There are currently over one billion Apple products in active use worldwide.

### SUBSTANTIVE ALLEGATIONS

25.     After years of customer frustration and attrition, on December 20, 2017, Apple admitted to one of the largest consumer frauds in history, affecting hundreds of millions of mobile devices across the globe.  Prompting the admission were reports of unexplained shutdowns of certain Devices surfacing more than two years earlier, with consumers complaining their Devices were suddenly shutting down even though the batteries were more than 30% charged.  Complaints accelerated in the autumn of 2016 and were accompanied by reports of unexplained heating.

26.     Despite the growing chorus of complaints, Apple remained silent until November 2016, when it finally admitted a problem, but limited its admission to a small serial range of iPhone 6s Devices manufactured in September and October 2015 because the batteries were exposed to "ambient air" during assembly.  Apple charged $79 in the United States to replace a battery at the time (and a similar price outside of the United States), but offered a free battery replacement to this small number of owners of Devices in the "limited serial range."

27.     Within days of Apple's November 2016 announcement, it became clear that a far

greater number of Devices were affected than Apple was letting on. Various media investigations revealed that the "bug" extended beyond the originally-identified iPhone 6s devices.

28.     Then, 2017 arrived, and Apple installed software updates on the Devices to gather additional diagnostic data in early January 2017. Based in part on that diagnostic data, on January 23, 2017, Apple released a software update, known as iOS 10.2.1. Apple told consumers that the update was to fix "bugs" or improve "security" on the Devices and a month later, Apple publicly disclosed that the software update had largely addressed the shutdown problem.

29.     Missing from these statements to consumers or to the tech press was the true purpose of the software update—to conceal a much larger defect than the public knew—namely, there was a mismatch between the Devices' hardware, including their processing chips and rechargeable lithium-ion batteries, and the ever-increasing demands placed on the Devices via Apple's constantly-updating iOS software platform. This mismatch is referred to as the "Defect(s)." And the software update did not "fix" or "cure" the Defect—it instead concealed it by secretly throttling the Devices' performance to reduce the number of unexpected shutdowns to a more manageable volume. Apple partially "cured" one defect by making another defect more aggressive—accomplished by violating federal computer fraud laws and a host of various state laws. For eleven months, the secret remained uncovered as Apple continued to hide the whole truth.

30.     Apple's throttling did not stop at iOS 10.2.1. On December 2, 2017, another set of throttling code was inserted in iOS 11.2[2], but Apple again told consumers the update was primarily to fix "bugs" and provide "improvements." Apple did not reveal the Defects.

31.     Only after independent research was published online in mid-December 2017, demonstrating the marked degradation of performance in a large sampling of the Devices after installation of the Updates, did Apple attempt to start to come clean. On December 20, 2017, Apple tacitly admitted that the Updates intentionally slowed the Devices (the "December 20 Admission")

---

[2] As used herein, the term "Updates" refers, unless otherwise stated, to iOS 10.2.1 and iOS 11.2. All of the iOS updates, however, issued by Apple prior to iOS 11.3 are part of Apple's misconduct and subsequent cover-up. iOS 12.2 beta was released June 25, 2018. Each of these later versions of iOS after iOS 11.2 are nothing more than Apple's attempt to further conceal the extent of its aberrant behavior.

CLASS ACTION COMPLAINT                    6

stating, in relevant part:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices.  Lithium—ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to *smooth out* the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7, with iOS 11.2, and plan to add support for other products in the future.[3]

32.     The December 20 Admission, however, contained the further misrepresentation that the code was designed to "*smooth out*" allegedly "[unexpected] instantaneous peaks" in performance.  A downpour of media reports ensued, several of which used the more appropriate term—"throttle"—to define this "smooth[ing]" feature that Apple inserted into the code for the iOS 10.2.1 update.

33.     The batteries have a limited number of charge and discharge cycles, and they degrade over time.  The batteries give off current which is used to drive the processor (*i.e.* the chips) in each of the Devices to perform tasks (*i.e.* play video, open applications, transmit data, etc). The throttling via the Updates permitted Apple to have the batteries draw less current to run the Devices for the same amount of time as a new battery, but the trade-off was that the processing speed was slowed down.  This is akin to a driver going slower to get better gas mileage.  Over time, the "gas tank" shrinks further as new and more demanding iOS updates are added, meaning even slower performance as the processor originally provided with the Devices struggle—not only due to their own limitations—but the limitations of the batteries to provide enough power current to keep pace with the new demands (the "Battery Issues").  Given the constant iOS upgrades requiring the processors in Apple's Devices to perform more and more tasks, the batteries were inadequate for the Devices from day one, hence the Defects.

---

[3] Shara Tibiken, "Apple admits slowing older iPhones, says it's to prevent battery issues," *C/Net* (Dec. 20, 2017) (available online at https://www.cnet.com/news/apple-slows-down-older-iphone-battery-issues/#ftag=CAD-09-10aai5b) (last visited July 1, 2018).

CLASS ACTION COMPLAINT                    7

34. Worse yet, due to the Defects and Battery Issues, consumers would logically be required to continually recharge their Devices to attempt to refill the "gas tank" with more power. This constant recharging only feeds the further degradation of the battery.[4] While Plaintiffs and the class need not attribute any motive behind Apple's intentional degradation of the Devices, it is evident that Apple continued to do so for the simple reason most frauds are committed: money. Although technically complex in part, the scheme was logical and simple: The Devices were designed defectively, and Apple released software updates to conceal the Defects, all the while exacerbating the effects of the Defects—principally decreased performance—so that Device users had no choice but to purchase new batteries or upgrade their Devices, resulting in additional payments to Apple and a sustained (albeit forced) customer base.

35. Further highlighting Apple's dependence on the "success" of its defective products, the Devices represented at least 70% of Apple's overall revenue for at least fiscal years 2013 to 2017 (nearly $800 billion), and to date. Critically, in 2016—just prior to the first of the Updates—Apple was stumbling for the first time in 15 years in iPhone sales, was facing a saturated iPhone market, decreased sales of iPads (and even its Mac product line), the end or phasing out of third party vendor "two-year" service contracts, and increased competition overall.

36. As such, a perfect storm was brewing for Apple, with a host of problems threatening its continued ability to profit in the smartphone and tablet markets. *No time*, and ***particularly during 2016 and 2017***, was a good time for Apple to reveal that its Devices were defective. And so, the sly saga progressed.

37. Through this confluence of events, consumers were defrauded into purchasing Devices with Defects and Battery Issues (because Apple never disclosed the problems), new batteries, and even new devices. Apple misrepresented material facts to consumers by representing each new device as faster with longer battery life, all the while omitting that any Defects or Battery

---

[4] Ironically, in Apple's U.S. Patent No. 9,912,186, issued March 6, 2018, and discussing charging techniques, it acknowledges that: "***Continued use of a lithium-polymer battery over time may also produce swelling in the battery's cells. . . a user of a device may not be aware of the battery's swelling and/or degradation until the swelling results in physical damage to the device.***" The application for this patent was in process since at least 2011.

CLASS ACTION COMPLAINT         8

Issues existed.  Because Apple put profits over its consumers, and deliberately misrepresented facts to make more profits, its scheme was willful and wonton, and with reckless disregard for its customers—Plaintiff and the class members.

**CHOICE OF LAW**

38.     By using their Devices or downloading a software update, Device users are presented with the iOS Software License Agreement.[5] There are separate Software License Agreements for each version of iOS software including: iPhone iOS 3.1, iOS 4.1, iOS 5.0, iOS 5.1, iOS 6.0, iOS 7.0, iOS 8.0, iOS 8.1, iOS 9.0, iOS 9.1, iOS 10, iOS 11, and iOS 11.2. The agreements do not differ in material terms, and provide that California law governs the agreements.[6]

39.     To the extent they apply, the iOS Software Licensing Agreements are effective at the point of sale—as soon as the customers turn on their Devices—and are thus part of the benefit of the consumers' bargain.  Without the iOS, for which there is a purported licensing agreement, the Devices simply do not work.

40.     Apple elected to have California law govern all claims and disputes concerning the common software required to operate all of the Devices at issue in this lawsuit.  Accordingly, the application of California law to all of the class members' claims is fair, appropriate, and an election affirmatively made by Apple consistent in its agreements.

41.     By using their Devices, consumers are told that they agree to be bound by California law as consumers must run Apple's proprietary iOS to use their Devices.

42.     Apple's principal place of business is in California, marketing materials were written and design of the defective Devices occurred in California, and all of the fraudulent, deceptive, and unfair actions emanated from California.  California has an interest in ensuring that businesses located within its borders act lawfully.

43.     Accordingly, California law should apply to Plaintiffs' claims.[7]

---

[5]  Versions of those agreements for each iOS, incorporated herein by reference, are available at https://www.apple.com/legal/sla/ (last visited June 27, 2018).
[6] California law applies unless the consumer is based in the United Kingdom.

[7] Plaintiffs do not otherwise waive their ability to bring other claims via amendment.

1

2

**CLASS ALLEGATIONS**

3       44.       Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs

4   seek certification of the following class:

5           **All purchasers, owners, users or lessees of the following Apple Devices: the Apple**

6           **iPhone 6, 6s, 6 Plus, 6s Plus, SE, 7, 7 Plus.[8]**

7       45.       **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**. The members of the class

8   are so numerous and geographically dispersed that individual joinder of all class members is

9   impracticable. Plaintiffs are informed and believe—based upon the publicly-available information

10  discussed herein—that there are millions of class members, making joinder impracticable. Those

11  individuals' identities are available through Apple's records, and class members may be notified of

12  the pendency of this action by recognized, Court-approved notice dissemination methods.

13      46.       **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2)**

14  **and 23(b)(3)**.  Apple has acted with respect to Plaintiffs and the other members of the proposed

15  class in a manner generally applicable to each of them. There is a well-defined community of

16  interest in the questions of law and fact involved, which affect all class members.  The questions of

17  law and fact common to the class predominate over the questions that may affect individual class

18  members, including the following:

19           a.   Whether Apple designed, manufactured, advertised, promoted, and sold Devices that

20               it knew contained Defects or Battery Issues, and withheld that information from

21               consumers or purposefully misrepresented the Devices to consumers;

22           b.   Whether Apple designed updated iOS to address Defects or Battery Issues in a

23               manner that slowed the performance of those Devices;

24           c.   Whether and to what extent Apple disclosed the effect of iOS Updates to Device

25               performance;

26           d.   Whether Apple used the iOS modification to profit from Plaintiffs and the other

27               class members by inducing them to buy new replacements for their Devices;

28  _____

[8] Because Apple affirmatively concealed its fraud, equitable tolling principles apply so as to toll any
applicable statute of limitations period.

e.   Whether Apple is subject to liability for fraudulently concealing material facts from Plaintiffs and the other class members;

f.   whether Apple is subject to liability for violating the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

f.   Whether Apple's conduct has violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

g.   Whether Apple's conduct has violated the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*;

h.   Whether Apple's conduct has violated Cal. Penal Code § 502;

i.   Whether Apple has been unjustly enriched as a result of its fraudulent conduct, such that it would be inequitable for Apple to retain the benefits conferred upon it by Plaintiffs and the other class members;

j.   Whether compensatory or consequential damages should be awarded to Plaintiffs and the other class members;

k.   Whether punitive damages should be awarded to Plaintiffs and the other class members;

l.   Whether restitution should be awarded to Plaintiffs and the other class members; and

m.   Whether other, additional relief is appropriate, and what that relief should be.

47.   **Typicality: Federal Rule of Civil Procedure 23(a)(3)**.  Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

48.   **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate class representatives because their interests do not conflict with the interests of class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The class members' interests will be fairly and adequately protected by Plaintiffs and

---

their counsel.

49.    **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).**
The prosecution of separate actions by individual class members would create a risk of inconsistent
or varying adjudications with respect to individual class members that would establish incompatible
standards of conduct for Apple.  Such individual actions would create a risk of adjudications that
would be dispositive of the interests of other class members and impair their interests.  Apple has
acted and/or refused to act on grounds generally applicable to the class, making final injunctive
relief or corresponding declaratory relief appropriate.

50.    Injunctive relief is particularly necessary in this case because: (1) Plaintiffs desire to
purchase products with the same qualities and attributes as Apple advertised the Devices to have;
(2) if Apple actually manufactured Devices with the qualities and attributes as deceptively
represented, Plaintiffs would purchase those Devices; (3) but Plaintiffs do not have the ability to
determine whether Apple's representations are true concerning the Devices if they purchase such
Devices in the future.  Indeed, Plaintiffs, and putative class members, in the future will likely want
to purchase Devices manufactured by Apple; however, they expect that Apple will not misrepresent
or conceal defects in those Devices (or subsequently-released iPhones), and will provide clear
explanations regarding the Updates to those Devices (without concealing or misrepresenting what
the Updates will do).

51.    **Superiority: Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior
to any other available means for the fair and efficient adjudication of this controversy, and no
unusual difficulties are likely to be encountered in the management of this class action. The
damages or other financial detriment suffered by Plaintiffs and class members are relatively small
compared to the burden and expense that would be required to individually litigate their claims
against Apple, so it would be impracticable for class members to individually seek redress for
Apple's wrongful conduct.  Even if class members could afford litigation, the court system could
not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and
increases the delay and expense to all parties and the court system.  By contrast, the class action

device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## TOLLING OF APPLICABLE LIMITATIONS PERIODS

52. Tolling principles—such as discovery rule tolling, fraudulent concealment tolling, and estoppel—prevent Apple from asserting any statute of limitations defense because of its concealment of Plaintiffs' ability to recognize and bring claims as described herein.

## CLAIMS FOR RELIEF

## COUNT 1

## VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT,

## 18 U.S.C. § 1030, *et seq.*

53. The Plaintiffs identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

54. Apple caused Plaintiff and class members to download and install iOS Updates to their Devices without informing its customers that the iOS Updates contained code that would diminish Device performance, or throttle performance, in order to compensate for undisclosed Defects in those Devices. Accordingly, Plaintiff and class members did not give permission for Apple to install iOS Updates onto their Devices—nor could they—as Apple did not provide material information to Plaintiff and class members regarding the updates.

55. Apple violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of iOS software Updates to Plaintiff and class members' devices to access, collect, and transmit information to Devices, which are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication. By transmitting information to class members' Devices, Apple intentionally caused damage without authorization to class members' devices by impairing the ability of those Devices to operate as warranted, represented, and advertised.

56. Apple's conduct has caused loss to Plaintiff and class members in real, economic damages. Plaintiff and class members have additionally suffered loss by reason of these violations,

---

in terms of added expense in operating their Devices, which have been throttled, or in the purchase of new, unthrottled Devices.

57.     Unless Apple is restrained and enjoined, Apple will continue to commit such acts. Plaintiff's remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by § 1030(g).

<u>COUNT 2</u>

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

58.     The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

59.     In accordance with the liberal application and construction of the UCL, application of the UCL to all class members is appropriate, given that Apple's conduct as described herein originated from California, the Devices and iOS code were designed and originated in California, and Apple's uniform iOS Software License Agreement provides that California law shall apply.

60.     Apple's uniform iOS Software License Agreement governs the reach of the class's claims because Apple's violations of the UCL were caused, in part, by the installation of certain operating software that throttled Device performance in order to further conceal the Defects and Battery Issues in Apple's Devices.

61.     Apple is a "person" as defined by Cal. Bus. & Prof. Code §17201.

62.     Apple violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

63.     Apple's "unfair" acts and practices include:

    a.   Knowingly designing, developing, manufacturing, advertising, and selling Devices with significant defects that result in the Devices not operating as intended, represented, or advertised under normal usage;

    b.   Developing software Updates that merely hide the aforementioned Defects and

---

CLASS ACTION COMPLAINT                14

Battery Issues by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

c. Concealing material information from consumers regarding its Devices, the Battery Issues, and Defects so that consumers were unable to make informed choices when purchasing the Devices;

d. Concealing material information from consumers regarding the Updates to operating software, so that consumers would not, nor could they, know that the Updates throttled their Devices; and

e. Using uniform, deceptive business practices such as throttling software to slow down Devices, requiring consumers to spend additional money on replacement batteries or Devices as a result of the Defects and Battery Issues.

64. Apple has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and California common law.

65. Apple's unlawful, unfair, and deceptive acts and practices include:

a. Knowingly designing, developing, manufacturing, advertising, and selling Devices with significant defects that result in the Devices not operating as intended, represented, or advertised under normal usage;

b. Developing software Updates that merely hide the aforementioned Defects and Battery Issues by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

c. Concealing material information from consumers regarding its Devices, the Battery Issues, and Defects so that consumers were unable to make informed choices when purchasing the Devices;

d. Concealing material information from consumers regarding the Updates to operating software, so that consumers would not, nor could they, know that the Updates throttled their Devices; and

e. Using uniform, deceptive business practices such as throttling software to slow down

Devices, requiring consumers to spend additional money on replacement batteries or Devices as a result of the Defects and Battery Issues.

66.     Apple violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of its Devices.  As alleged more fully herein, apple's marketing and sale of Devices, and more specifically its failure to inform customers of the negative and throttling impact iOS Updates would have on those Devices, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein.  Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices.  Apple's conduct is ongoing and continues to this date.

67.     Apple violated § 17200's prohibition against unfair conduct by failing to inform its customers about the Defects and Battery Issues in the Devices; engaging in a pattern or practice of concealing those facts and urging its customers to install regular updates to the iOS software to throttle those devices—thereby depriving those Device owners of the performance of those devices that existed at the time of purchase.  This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct— crippling Devices that are, in many instances, consumers' lifelines—outweighs any alleged benefit. Specifically, the utility gained by "upgrading" the iOS software of the Devices was outweighed by the diminishment of the Device functionality.  Apple engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about the Devices and iOS software, or offering batteries to customers who experienced Battery Issues).

68.     Apple engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the Battery Issues and Defects in its Devices to avoid damage to its sales or reputation.  It withheld critical and material information from Plaintiff and class members, competitors, and the marketplace, all to its unfair competitive advantage.

69.     Apple's business practices, as alleged herein, constitute fraudulent conduct because

---

they were likely to deceive, and did deceive, class members into purchasing Devices, and upgrading those Devices with iOS Updates, when those Devices were defective and the Updates would only throttle the Devices instead of fixing them.

70.     Apple's representations and omissions—all which emanated from California—were material because they were likely to deceive reasonable consumers.

71.     California law prohibits unauthorized computer access and fraud pursuant to Cal. Penal Code § 502.

72.     As a result of Apple's installation of iOS Upgrades on Plaintiff's and class members' devices, Apple knowingly accessed and without permission altered, damaged, deleted, destroyed, and otherwise used any data stored on Plaintiff's and class members' devices.

73.     Plaintiff and class members did not know that Apple's iOS Update would throttle Device performance; accordingly, Apple did not have permission to install iOS Updates on class members' Devices.

74.     Apple accessed and without permission altered and used data on class members' Devices to execute a scheme or artifice to defraud the class members' by, among other things, maintaining market share, convincing Plaintiff and class members to purchase new Devices, and to otherwise ensure that Plaintiff and class members would not discover Apple's underlying fraud regarding its omissions and misrepresentations regarding the Devices.  As a result, Apple violated Cal. Penal Code § 502.

75.     The iOS Updates led to the deterioration of the Devices and functionality of the Devices as a whole, driving customers to purchase new Devices who would not have outlaid the additional costs had they known the truth, and Apple not concealed the Device Defects and Battery Issues.

76.     As a direct and proximate result of Apple's unfair, unlawful, and fraudulent acts and practices, Plaintiff and class members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing the Devices, and increased time and expense in dealing with Device performance issues.

77. Apple acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and class members' rights. Apple's knowledge of the Devices' performance issues, and release of software to throttle phone performance, put it on notice that the Devices were not as it advertised.

78. Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Apple's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

<u>COUNT 3</u>

**CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT,**

**Cal. Penal Code § 502,** ***et seq.***

79. The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

80. In pushing Updates to its iOS to unsuspecting users of its Devices, Apple violated the California Penal Code, Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq.*

81. When Apple provided iOS Updates to consumers—Plaintiffs and class members—they did not know, nor could they in the exercise of reasonable diligence know, that the software Updates contained code that would throttle their Devices, designed solely to further conceal the Defects and Battery Issues in those Devices.

82. Because consumers did not know that the iOS Updates contained such throttling code, they did not give Apple permission to access their Devices to alter the data or computer systems on those Devices.

83. Apple provided the iOS Updates to consumers as part of a scheme or artifice to defraud and deceive, because it provided the Updates to consumers ***instead of*** informing them of the Defects and Battery Issues inherent on their Devices. Indeed, Apple could have informed consumers that the Battery Issues they were having with their Devices could be resolved via a

battery replacement.  Apple instead chose concealment, and throttling Devices via the installation of software that would do so.

84.      Apple offered iOS Updates to consumers to throttle their Devices as a means to encourage consumers to purchase new devices, wrongfully obtaining money from those consumers.

85.      By offering the iOS Updates to consumers, instead of revealing the truth, Apple disrupted or caused the disruption of consumer services when it improperly and unlawfully throttled users and class members' Devices.  Plaintiffs and class members did not consent to having their Devices throttled, and had they known that the iOS Updates would throttle their Devices, they would not have installed the iOS Updates.

86.      As a result of Apple's unlawful conduct, Plaintiffs and class members were damaged in an amount to be determined at trial.

## COUNT 4

### TRESPASS TO CHATTELS

87.      The Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the class, repeats and alleges Paragraphs 1-112, as if fully alleged herein.

88.      California common law prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either a) the deprivation of the use of that personal property; or b) the impairment of the condition, quality, or usefulness of the property.

89.      Apple impaired the condition, quality, and usefulness of Plaintiff and class members' Devices, or parts of them, without their knowledge or consent.  Such acts constituted an intentional interference with the use and enjoyment of the Devices.

90.      Apple acted intentionally, because it knew that Plaintiff and class members were downloading computer software onto their Devices that reduced the performance of the Devices. Plaintiff and other class members only consented to the installation of iOS Updates that would improve performance, not diminish performance.

91.     Apple engaged in deception to gain access to the Devices and install new computer software or iOS Updates.

92.     Plaintiff and class members suffered actual damages as a result of Apple's actions in an amount to be determined at trial.

93.     Furthermore, Plaintiff seeks punitive damages because Apple's trespass was committed from wanton or malicious motives, or reckless disregard of the rights of Plaintiff and the class, for the purpose of concealing the Defect. PRAYER FOR RELIEF

94.     WHEREFORE, Plaintiffs, individually and on behalf of all other class members, respectfully request that the Court enter an Order:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as class Representatives, and appointing Plaintiffs' attorneys as class Counsel;

b.     Enjoining Apple from continuing the unfair business practices alleged in this Complaint;

c.     Ordering Apple to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other class members, as allowable by law;

d.     Ordering Apple to pay both pre- and post-judgment interest on any amounts awarded;

e.     Ordering Apple to pay attorneys' fees and costs of suit; and

f.     Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

July 31, 2019                                    **LEVI & KORSINSKY, LLP**

                                                By: */s/ Rosemary M. Rivas*
                                                Rosemary M. Rivas
                                                44 Montgomery Street, Suite 650
                                                San Francisco, CA 94104
                                                Telephone: (415) 373-1671
                                                Facsimile: (415) 484-1294

                                                *Counsel for Plaintiff Zoe Naylor*

1

2

Daniel C. Levin
**LEVIN SEDRAN BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Tel: (877) 882-1011
Fax: (215) 592-4663

*Counsel for Plaintiffs:*
*Jeanette Taylor, Erica Dillard, Kimberly Brown,*
*Robyn Lipetz. Ronald Hawkins, Amy Norman*

James Vlahakis
**SULAIMAN LAW GROUP**
2500 South Highland Ave, Suite 200
Lombard, IL 60148
Tel: (312) 313-1613

*Counsel for Plaintiff:*
*Hannah Stratton*

Kathleen Herkenhoff
**HAEGGQUIST & ECK, LLP**
225 Broadway, Suite 2050
San Diego, CA 92101
Tel: (619) 342-8000
Fax: (619) 342-7878

*Counsel for Plaintiffs:*
*Shemina Gheewalla*

Melissa R. Emert
**STULL STULL & BRODY**
6 East 45th Street
New York, NY 10017
Tel: (954) 341-5561
Fax: (954) 341-5531

*Counsel for Plaintiffs:*
*Kenneth Woolsey, Laura Carlo, Hayley Goldfeld*

Joshua Harris Eggnatz
**EGGNATZ PASCUCCI, P.A.**
5400 University Drive, Suite 417
Davie, FL 33328
954-889-3359
954-889-5913 (fax)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT                    21

1
2

*Counsel for Plaintiff:*
*Gerald Tiano*

3

Bradford B. Lear

4

**LEAR & WERTS, LLP**
2003 W. Broadway

5

Ste. 107
Columbia, MO 65203

6

(573) 875-1991
(573) 875-1985 (fax)

7
8

*Counsel for Plaintiff:*
*James Kile*

9

Derek G. Howard

10

**DEREK G. HOWARD LAW FIRM, INC.**
42 Miller Avenue

11

Mill Valley, CA  94941
415432-7192

12

415-524-2419 (fax)

13
14

*Counsel for Plaintiff:*
*Timothy Morgan*

15

David J. Stone

16

**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue, Suite 3040

17

New York, NY 10022
212.308.1704

18
19

*Counsel for Plaintiffs:*
*Fredrick Christensen and Lauren Long*

20

Kyle J. McGee

21

**GRANT & EISENHOFER. PV**
123 Justison Street, 7th Floor

22

Wilmington, DE 19801
302.622.7000

23
24

*Counsel for Plaintiff:*
*Yuichi Murakami*

25
26
27
28

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Rosemary M. Rivas, attest that concurrence in the filing of this document has been obtained from the other signatory.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of July 2019, at San Francisco, California.


/s/ *Rosemary M. Rivas*
Rosemary M. Rivas